## QUIÑONES *v.* CASTELLÓ ET AL.

## APPEAL from the District Court of Mayagüez.

No. 483.—Decided June 10, 1910.

REDEMPTION BY THE MORTGAGEE OF AN ESTATE SOLD FOR TAXES—PRICE OF RE-
DEMPTION GREATER THAN THE AMOUNT OF TAXES DUE.—Section 348 of the
Political Code, as amended by the Act of March 14, 1907, considers the whole
price of the redemption paid by the mortgagee as of the same character,
priority and nature as the mortgage debt due him, no distinction being
established between the amount of money due for taxes and the remainder
of the payment up to the amount necessary to cover the whole price of the
property redeemed for taxes.

ID.—RIGHTS OF THE SECOND MORTGAGEES.—The second mortgagees of an estate sold
for taxes and redeemed by the first mortgagee who paid for the redemption
more than the amount due for taxes, have no right to prevent the first
mortgagee from adding, with the same priority, to the amount of his first
mortgage the whole price paid by him to redeem the property, and when
the price of redemption exceeds the amount of taxes due, said excess cannot
be applied to their mortgages by the second mortgagees.

CONSTITUTIONAL LAW—LAWS IMPAIRING THE OBLIGATIONS OF CONTRACTS.—Al-
though article 1, section 10, clause 1, of the Constitution of the United
States may not be in force in Porto Rico, it is a recognized rule of natural
justice that no law impairing the obligation of contracts shall be enacted.

ID.—PRESUMPTION OF ITS RECOGNITION BY THE LEGISLATURE.—There being no
weighty reason showing that the contrary was the case, it is to be presumed
that the Legislature, in passing the Act of March 14, 1907, amending section
348 of the Political Code, has recognized the principle that no law impairing
the obligation of contracts shall be enacted.

ID.—CONSTRUCTION OF THE LAW.—The general principle that the obligations of
contracts shall not be impaired by subsequent laws must be construed so as
to do even-handed justice to all parties interested, the aforesaid section 348
of the Political Code, as amended by the Act of March 14, 1907, being sus-
ceptible of such construction.

ID.—JUDICIAL DECLARATION THAT AN ACT IS UNCONSTITUTIONAL.—As a general
rule courts very properly hesitate to declare an act unconstitutional which
for a considerable period of time has been regarded as valid by the execu-
tive department of the Government and pertains to the administration of the
public revenues.

ID.—DECLARATION BY THE SUPREME COURT THAT AN ACT IS UNCONSTITUTIONAL.—
When an act hastily passed and put into execution without judicial inter-
pretation is alleged to be unconstitutional, this court, should a proper case
be squarely presented, shall determine, as its duty requires, what the law
really is, and whether the statute or the constitution must prevail.

ID.—THE FORAKER ACT—ACTS IMPAIRING THE OBLIGATION OF CONTRACTS.—In our
Organic Act there is no prohibition against the passage of a statute im-

pairing the obligation of a contract, and so this court is left to the general principle of jurisprudence for its guide in determining the validity of section 348 of the Political Code, as amended by the Act of March 14, 1907.

REDEMPTION—VALIDITY OF THE ACT OF MARCH 14, 1907, AMENDING SECTION 348 OF THE POLITICAL CODE.—This act has already been held by this court to be valid and effective, in the case of *Cancel* v. *The Registrar,* decided June 23, 1909, when the following doctrine was established: ''In the same manner that only things of the same kind can be added together, so when, as in this case, it is stated that the amount paid to redeem the property should be added to the mortgage debt, it is because this special law considers both obligations as homogeneous and gives to the amount paid for the redemption the same legal force possessed by the property right constituted by the mortgage recorded in the registry of property and in the degree appearing therein.''

ID.—OBJECT OF THE ACT OF MARCH 14, 1907—RIGHTS OF THE MORTGAGOR AND OF HIS CREDITORS.—By the aforesaid Act of March 14, 1907, amending section 348 of the Political Code, the redemption of an estate sold for taxes is allowed within a certain time for the benefit of the taxpayer and of the mortgagee, if any, but especially for the benefit of the landowner, without making any distinction between the mortgagor and his creditors, nor between the different mortgagees, any one of whom has a right to redeem.

ID.—CONTRACTS, MORTGAGES, ETC.—LAWS IN FORCE AT THE TIME OF THEIR EXECUTION.—Persons making contracts (mortgages as well as any other), are presumed to contract with the view to the statutes written in the books, and such acts of the legislature thus become a part of the subsequent contracts.

RIGHTS OF THE PARTIES—DILIGENCE IN ASSERTING THEM.—The law does not favor those who fail to assert their rights in time and in the proper form, and in the present case no effort has been shown on the part of the holders of the second mortgage to redeem the land from the tax sale and to tack the price of redemption to their own encumbrance.

The facts are stated in the opinion.

Mr. F. L. Cornwell for appellants.

Messrs. José de Diego and Juan J. Perea for respondents.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This suit was commenced with a complaint filed in the District Court of Mayagüez by Tomás Quiñones y Guzmán, on May 29, 1909, seeking the collection of two thousand two hundred and fifty dollars ($2,250) and interest, from Salvador and Gerardo Castelló, and a thousand dollars ($1,000) more and interests and costs, including attorneys' fees, up to the sum of three hundred dollars ($300), also the cancellation of a certain mortgage made in favor of José María Silva y Monsegur; and so forth.

The record in this case is not certified to by the secretary of the district court nor by the attorneys of the parties, both plaintiff and defendant, as required by the statutes and the rules of this court; but, in view of the practice formerly prevailing and in accordance with the opinion rendered by Mr. Justice del Toro on April 4 last, in the case of *American Railroad Co.* v. *The Municipal Judge of Ponce* [16 P. R. Rep., 227], we have proceeded to consider the questions raised in this record on this appeal; the same as if the record had been properly certified. We have heretofore ruled that in records presented to this court subsequently to April 4, 1910, the rule for a proper certificate will be rigidly enforced and we abide by that decision.

During the progress of the case the facts developed as follows:

I. By a deed executed before the notary of Mayagüez, Víctor P. Martínez, on July 18, 1907, Gerardo Castelló y Camps in his own right, and with the consent of his wife, Mrs. Asunción Blanch y Camps, and as attorney in fact of Salvador Castelló y Camps, acknowledged that he had received from Tomás Quiñones y Guzmán, as a loan, the sum of $2,250, which amount the debtors bound themselves to repay in three equal annual instalments of $750 each; said instalments becoming due on December 18, of the years 1908, 1909 and 1910. Said loan bearing interest at the rate of 1 per cent monthly, for the sums unpaid from the date of the execution of the deed, until the entire sum loaned should be repaid; interest being payable every three months. The lack of payment of any instalment, or of two consecutive quarters of interest, or of the amount of taxes for one-half year on the property stated, would cause the maturity of the loan in its entirety.

II. As security for the obligations referred to, the debtors, Castelló, mortgaged in favor of Quiñones y Guzmán, an urban structure made of bricks, consisting of two stories, with an iron balcony, and the lot whereon said house is built,

which is situated on San José Street, to-day known as 11th of August Street, in the city of Mayagüez, at the corner of Mirasol Street, which house and lot was fully described in the complaint; said mortgage covering an additional debt of 300 *pesos,* for expenses and costs, including attorneys' fees in case of litigation. This mortgage deed was recorded in the Registry of Property of Mayagüez on folio 124 of volume 61; being property No. 235, quadruplicate, inscription No. 10.

III. The debtors, disregarding the payment of the instalments falling due and interest agreed upon, also failed to pay any of the taxes on the property encumbered; and a summary proceeding was instituted by the collector of internal revenue of the district, with the approval of the Treasurer, said property being sold, at public auction, for the collection of two hundred and forty-nine dollars and twenty-nine cents ($249.29), which sum was owing for taxes, penalties, and costs.

On the first of September the auction sale took place, and Messrs. Fritze Lundt & Co., Successors, obtained the property as the highest bidders, for the amount of one thousand dollars ($1,000), to whom a certificate of purchase was issued on the 5th of the same month.

IV. Meanwhile, Fritze Lundt & Co., Successors, prosecuted a case, No. 1904, in the same district court against Salvador and Gerardo Castelló for the collection of one thousand four hundred and forty-three dollars and fifty-one cents ($1,-443.51), legal interest and costs. Attachment being levied in this suit, first upon the urban property referred to, and afterwards on the amount of seven hundred and fifty dollars and seventy-one cents ($750.71), which was the rest of the price of the auction sale, to which the preceding paragraph refers, after the amount of two hundred and forty-nine dollars and twenty-nine cents ($249.29), which the property owed for taxes, penalties and costs, was satisfied.

V. The plaintiff, Tomás Quiñones, as is alleged, was not notified of the execution sale of the property until he was

advised of it in his capacity of mortgage creditor, by the collector of internal revenue; and then, in order to preserve his right, he was compelled to redeem the property, by paying the purchasers, Fritze Lundt & Co., Successors, one thousand and twelve dollars and sixty-six cents ($1,012.66), that being the sum for which the property was sold, including interest at 1 per cent per month from the date of the auction sale down to the time of its redemption.

VI. The sum remaining after the auction sale, to wit, seven hundred and fifty dollars and seventy-one cents ($750.71), as the complaint states, was attached in favor of Fritze Lundt & Co., Successors, after covering the liabilities, taxes and costs of the property; Quiñones having instituted a proceeding in a levy on personal property, claiming in said suit the said amount of seven hundred and fifty dollars and seventy-one cents ($750.71), from Fritze Lundt & Co., Successors, and Gerardo y Salvador Castelló; Quiñones intervening as a third party in the suit where the attachment was ordered—that is to say, in the suit prosecuted against the Castelló brothers by said firm; being case No. 1904.

VII. After all the proceedings had taken place the said case was set and heard in the District Court of Mayagüez and a judgment was rendered, on April 26, 1909, dismissing the plea of intervention with costs upon the petitioner, Quiñones, and ordering that Fritze Lundt & Co., Successors, should recover from Tomás Quiñones the sum mentioned with interest and costs in the case. The judgment was duly complied with by the intervenor, Quiñones. In consequence of these facts the plaintiff claimed that the amount he had paid for the redemption of the property should be added to his mortgage with equal priority with the first mortgage.

VIII. A second mortgage was laid on the same property in question which was established by Castelló brothers on behalf of José Ma. Silva y Monsegur, by deed executed on June 9, 1908, before the notary, Víctor P. Martínez y González, to

secure three promissory notes for the amount of four thousand dollars ($4,000), made to the order of the creditor.

Under these circumstances, the following proceedings were taken:

A. On default being made, Tomás Quiñones y Guzmán filed a complaint in the District Court of Mayagüez for the collection of his mortgage debt of two thousand two hundred and fifty dollars ($2,250), and interest, and united in the said complaint to his mortgage debt, one thousand dollars ($1,000), as the amount of the redemption of the property encumbered and interest from October 9, 1908, the date when the redemption was made; praying, further, for the cancellation of the second mortgage which was constituted in behalf of Silva, in case the property was sold, and after the proceeds were disposed of in the proper manner.

B. The defendants filed a demurrer to said complaint basing the same on the allegation that the complaint did not state facts sufficient to constitute a cause of action, in reference to the amount of seven hundred and fifty dollars and seventy-one cents ($750.71), remaining from the one thousand dollars ($1,000), claimed as the amount of redemption; said demurrer was overruled by the court by order entered on August 11, 1909.

C. The defendants then answered the complaint and on October 20, 1908, the case was set for the hearing, and thereupon the parties appeared by their respective counsel, the attorney for the plaintiff having presented a verbal motion before the commencement of the trial to the effect that judgment be entered upon the pleadings on account of the insufficiency of the answer; which motion was granted by the court and judgment was rendered on the same day, declaring that plaintiff should recover from defendants, Salvador and Gerardo Castelló, the sum of two thousand two hundred and fifty dollars ($2,250), as the amount of the mortgage debt with interest at 1 per cent monthly, and besides, the $1,000 paid for the redemption and interest at same rate, and order-

ing that the mortgage constituted in favor of José María Silva, or in favor of the indorsees of the notes guaranteed by said mortgage, be entirely canceled in the registrar's office, in case the property should be sold for payment to the first mortgage creditor of his claims as herein set forth.

D. On the trial of the cause, the District Court of Mayagüez, on October 20 last, rendered a judgment which it is well to copy entire; and it is expressed in the followings words, to wit:

"This cause came on to be heard to-day, the plaintiff appearing by his attorney, Juan J. Perea, and the defendants by their counsel, Fernando Vázquez. Counsel for the plaintiff presented a motion to the court requesting that the answer be declared to be insufficient, and that the same be considered as an omission of the statements made in the complaint; and that judgment be rendered on the pleadings. The court, after hearing the motion and the oral arguments of counsel, declares the motion to be well founded, and renders judgment declaring that the law and the facts are in favor of the plaintiff, and ordering that the plaintiff, Tomás Quiñones y Guzmán, recover from the defendants, Salvador and Gerardo Castelló, two thousand two hundred and fifty dollars ($2,250), and interest on said amount, at 1 per cent per month, from the 19th of January, 1908, until the date on which the judgment shall be satisfied; and one thousand dollars ($1,000) more, and the interest thereon, at the same rate of 1 per cent per month, from the 9th of October, 1908, until the creditor shall have recovered the said sum of one thousand dollars ($1,000), and the costs of this proceeding, up to the amount of three hundred dollars ($300), secured by the mortgage. It is ordered that this judgment be entered in the appropriate book of this court and that an order be issued to the marshal, for the execution of the same by means of the sale of the mortgaged property designated in this record; and it is further ordered, that the subsequent mortgage, constituted in favor of José María Silva y Monsegur, or of the indorsees of the promissory notes guaranteed by the same be totally canceled in the registry of property, in case the property should be sold for the payment to be made to the first creditor, for his mortgage and for the debt proceeding from the redemption."

E. From this judgment the defendant duly prosecuted an appeal to this court and assigned, as committed by the trial court, the following errors:

"I. The court committed an error of law, by failing to declare that the demurrer, denying the existence of a cause of action, which demurrer was taken in due time, was well founded; and thus infringed the sixth subdivision of section 105 of the Code of Civil Procedure.

"II. After the payment of the taxes, the rest of the price of the house belonged to the second lienholder, Tomás Quiñones, up to the amount required to cover the debt due to him; and if there remained a surplus, then that surplus belonged to the third lienholder, José María Monsegur. After the house had been sold at public auction for the payment of taxes amounting to two hundred and forty-nine dollars and seventy-one cents ($249.71), there was a surplus of seven hundred and fifty dollars and twenty-nine cents ($750.29), which belonged to Tomás Quiñones, as part payment of the debt due to him. And by failing to make an order to that effect, the court committed an error.

"III. Since Tomás Quiñones has not received the said surplus of seven hundred and fifty dollars and twenty-nine cents ($750.29), the Law of Contracts and the Law of Obligations contained therein, have been infringed. And the obligation established in the contracts made by the brothers Castelló with Tomás Quiñones and José María Silva y Monsegur, has been impaired, inasmuch as Tomás Quiñones would collect from the house, before José María Silva Monsegur, an amount of money which is not secured by a mortgage on said house. And the court by failing to recognize this, committed an error.

"IV. The law enacted by the Legislative Assembly, amending section 348 of the Political Code which was approved in March, 1907, is null and void, because it impairs the obligation of the contract made by the brothers, Gerardo and Salvador Castelló, with Tomás Quiñones and that with José María Silva Monsegur; and, therefore, said law cannot be applied against the rights of José María Silva Monsegur. And the court erred by failing to recognize this fact.

"V. Section 10 of Article I, in clause 1 of the Constitution of the United States, prohibits any State from passing any law, impairing the obligation of a contract. And any law enacted to that effect is null and void, as has been declared by innumerable decisions of the Supreme Court of the United States. And the court erred by failing to recognize this legal principle."

1. Let us examine these propositions combined and as a whole, as they really present only a single question. There being no disputè about the facts, all the questions are purely legal and arise from the allegations made by the parties, after overruling exceptions taken to the complaint, the answer being declared insufficient, and judgment rendered on the pleadings.

2. The plaintiff's case is based on the construction of section 348 of the Political Code, in regard to the collection of taxes, as amended by the Act of March 14, 1907, which amendatory Act, in so far as the same affects this case, reads as follows:

"When the property is redeemed by a mortgagee, the redemption money paid by him shall be added to his or her mortgage lien and may be recovered with the same rate of interest borne by the mortg lien, and when a tenant or lessee redeems such property he may deduct the amount of such redemption money from his rent." (See Rev. Stat. P. R., p. 429, and Sess. Acts of 1907, p. 344.)

As may be seen, the statute which we have just cited considers the payment made by the mortgage creditor, in order to redeem the property, as a preferred encumbering obligation, which sum or payment must be added to the mortgage debt due him, and this means that the amount of said payment must be added to the mortgage debt and partakes of its nature and legal effect, and the law makes no distinction whatever between the amount of money due for taxes and the remainder of the payment up to the amount necessary to cover the whole price of the property redeemed from tax sale.

3. The plaintiff claims the entire sum expended in redeeming the property, adding it to his mortgage, while the defendant asserts that the plaintiff is only entitled to reimbursement for the amount of the taxes paid, and that then his first mortgage should be first paid, leaving to the defendant the balance remaining, if any, to be applied on his debt secured by the second mortgage. In other words the contro-

versy became one involving the priority of encumbrances and incidentally the force and effect to be given to the amendment cited to the Political Code. Certainly had not the amendatory Act of March 14, 1907, been passed, the money arising from the sale of the property would have been applied as contended for by the appellants. Should the said act be so construed as to give the respondent priority over the appellant as claimed? Let us see.

4. Although the article of the Constitution of the United States (Article I, section 10, clause 1), denouncing laws impairing the obligation of contracts, may not be in force in Porto Rico, yet the general principle embodied in it is a recognized rule of natural justice which the Insular Legislature will not, without very weighty reasons, be presumed to have overridden in the passage of the law on March 14, 1907. This statute must be construed so as to give even-handed justice to all parties interested; and it certainly is capable of such a construction. (*Ohio Mutual Ins. Co.* v. *Marietta Woolen Factory,* 1 Ohio Dec., 577.)

5. It may be observed that in the Bill of Rights, which is included in the amendment to the Organic Law of Porto Rico, lately recommended by the Secretary of War to the President of the United States and by him laid before Congress with his approval, is substantially contained this provision of the Constitution of the United States in the following words: "That no law impairing the obligation of contracts shall be enacted." This is merely a recognition of the general principle which should prevail in all legislation independent of any written requirement; and it will not be hastily presumed that our Legislative Assembly intended to disregard such a plain element of the inherent rights of our citizens.

6. Courts very properly hesitate to declare an act of the Legislature unconstitutional or void, and especially one which has for a considerable period of time been treated as valid by the executive department of the Government and pertains to the administration of the public revenues. (*Fletcher* v.

*Peck,* 10 U. S. 87; *Dartmouth College* v. *Woodward;* 17 U. S., 624; *Parish of St. Landry* v. *Stout,* 32 La. Ann., 1278; *McClure* v. *Owens,* 21 Iowa, 133; *People* v. *County of N. Y. Suprs.,* 41 N. Y., 288; *Bedford* v. *Shilling,* 8 Am. Dec., 718.)

But if the act has been hastily passed and put into execution without judicial interpretation this court will, when a proper case is squarely presented, determine as its duty requires, what the law really is, and whether the statute or the constitution must prevail. In our Organic Act, which is our insular constitution, there is at present no prohibition against the passage of a statute impairing the obligation of a contract, and so we are left to the general principles of jurisprudence for our guide in determining the validity of the statute passed on March 14, 1907. This act has already received the attention of this court and been held to be valid and effective. In an administrative appeal, decided by us on June 23, last (1909), we reviewed this law and put it into force. In the opinion rendered by Mr. Justice Figueras we say: "In the same manner that only things of the same kind can be added together, so when, as in this case, it is stated that the amount paid to redeem the property should be added to the mortgage debt, it is because this special law considers both obligations as homogeneous and gives to the amount paid for the redemption the same legal force possessed by the property right constituted by the mortgage recorded in the registry of property and in the degree appearing therein." (*Pascasio Cancel Martínez* v. *Registrar of Arecibo* [15 P. R. Rep., 473].)

We do not feel inclined to overrule this decision, although it was made in an administrative appeal; because it seems to us well founded on correct principles. In order to secure the collection of taxes by the Government the taxes are made a preferred lien on the land of the taxpayer; then, for the benefit of the taxpayer and the mortgagees of the lands, if any, a redemption is allowed within a certain time; but to encourage redemptions, still for the benefit of the landowner, the act under discussion was passed. It is perfectly fair to

everyone and makes no distinction between the mortgagor and his creditors nor between the different mortgagees. Any of them has a right to redeem. There is no contest presented here between different parties claiming the right of redemption. When such a contest arises it will be time enough to determine which should have the preference.

7. It must be further borne in mind that both of the mortgages involved in this case were executed subsequently to the passage of the act of March 14, 1907; the first mortgage being dated July 18, 1907, and the second June 9, 1908. Persons making contracts, mortgages as well as any other are presumed to contract with a view to the statutes written in the books, and such acts of the legislature thus become a part of the subsequent contract. (*National Bank of West Ark.* v. *Sebastian County,* Federal Cases, No. 10040; 5 Dill., 414; *Aycock* v. *Martin,* 37 Ga., 124; 92 Am. Dec., 56; *Wartman* v. *City of Phila.,* 33 Pa. St., 202.) Then the holders of the second mortgage have no right to complain that the holder of the first mortgage has availed himself of the privilege of redemption and the consequent right to tack the redemption price to his mortgage, as prescribed in the statute. Especially is this the case in the absence of any effort shown on the part of the holders of the second mortgage to redeem the land from the tax sale and to tack the price of redemption to their own encumbrance. The law does not favor those who fail to assert their rights in time and in the proper form.

8. Other questions are raised and argued by the counsel for respondent in their brief, but they are not, in the view taken of those heretofore discussed, essential to the decision of the case and will not be considered.

9. The district court very properly followed the law as written in the statute books, and probably had in view the opinion of this court cited herein; and there being nothing in the decision contrary to the general and fundamental principles of justice, as set forth in the great body of our jurisprudence, we are constrained to affirm the judgment rendered

by the trial court on October 20, 1909, in favor of the plaintiff, Tomás Quiñones y Guzmán.

*Affirmed.*

Chief Justice Hernández and Justice del Toro concurred. Justice Wolf signed, stating that he concurred in the judgment.

Mr. Justice Figueras did not sit at the hearing of this case.